Appellant, Samuel C. Williams, was convicted on May 1, 1985, of the offense of trafficking in cocaine, a controlled substance, in violation of § 20-2-80 (2)(a), Code of Alabama 1975. He was sentenced to 25 years' imprisonment and fined $50,000. He appeals, raising ten issues.
 I
Appellant contends that the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant because, he says, the warrant was issued without probable cause and was based upon an affidavit which the affiant "knew was false or would have known was false except for a reckless disregard of the truth."
The search warrant in the instant case was sought as a result of three so-called "controlled drug buys" from appellant. The state's evidence showed that in January 1985, a person referred to as "Informer A" was given $300 by the police officers and sent to appellant's residence to buy a quantity of cocaine. The informer entered the residence and returned with the cocaine. This procedure was successfully repeated twice by the same informant in February, the last buy being within 72 hours of the issuance of the warrant. On each occasion, the officers observed the informer enter the residence and return with the cocaine. On each occasion, the informer reported that he had observed cocaine on the premises and had purchased cocaine from appellant. The informer was considered reliable, having furnished information on several prior occasions which resulted in five arrests and one conviction for drug violations. With this information, the officers obtained a day-time search warrant to search appellant's residence, outbuildings, and all automobiles within the curtilage, for the following: "Cocaine and/or any mixture, compounds, or substance containing cocaine and all other controlled substances. Also to include all notes and records relating to drug activity."
The search was conducted pursuant to the warrant, and the officers discovered and seized cocaine from appellant's trousers pocket; cocaine from a kitchen cabinet; a plastic straw and residue from the kitchen table; inositol; a razor blade; aluminum foil; plastic bags; "triple-beam" and "Y-line" scales; 24 aluminum foil packages containing cocaine, found in a bottle taken from under appellant's house; a .38-caliber pistol; some "pills"; and $1,245 cash from appellant's trousers pocket, of which $250 had been marked and used in one of the "controlled buys." The total weight of the cocaine seized was 38.8 grams. The cocaine contained inositol.
Appellant testified at the suppression hearing and denied any knowledge of the cocaine, the informer, or the $250 found in his trousers pocket which had been used in one of the "controlled buys." It can be inferred from defense counsel's cross-examination of prosecution witnesses and from appellant's testimony at the suppression hearing that the thrust of appellant's defense is that he was the victim of police harrassment and that the money used in a controlled buy and the cocaine found on his premises were planted by the police, the informant, or both.
When called upon to issue a search warrant, the task of the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the *Page 883 
person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). And the duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id.; McCray v. State,501 So.2d 532 (Ala.Cr.App. 1986), cert. denied, 501 So.2d 532 (Ala. 1987).
The so-called "two-pronged test," derived from the decisions of the United States Supreme Court in Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. UnitedStates, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), i.e., whether the basis of knowledge of the informer was revealed and the veracity or reliability of the informer sufficiently established, was abandoned in Illinois v. Gates, in favor of the "totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." Illinois v. Gates,462 U.S. at 238, 103 S.Ct. at 2332. The Court stated in Gates that an informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of the informant's report, but that these elements are not to be considered as entirely separate and independent requirements to be rigidly exacted in every case. The Court explained that they should be considered as intertwined issues that may be useful in determining whether there is probable cause to believe that contraband or evidence is located in a particular place. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Id. at 236,103 S.Ct. at 2331 (quoting from Spinelli v. United States, 393 U.S. at 419,89 S.Ct. at 590-91).
The issuance of the search warrant in the instant case did not depend entirely upon the information furnished by the informant. The informant's information was partly corroborated. Here, the informant had cooperated closely with the police by making the controlled purchases. The police corroboration is a coordinate and intrinsic part of the informant's operation, which lessens the likelihood that the information is false. Where an informer works in tandem with a law officer, the law officer continually observing the informer, the reports of the informer may be deemed credible even where certain material aspects of the informer's activities are without the officer's personal knowledge or observation. People v. Exline, 98 Ill.2d 150, 74 Ill.Dec. 610,456 N.E.2d 112 (1983). State v. Gamage, 340 A.2d 1 (Me. 1975); 1 W. LaFave, Search and Seizure § 3.3 (f) (2d ed. 1987). Here, the informant was searched each time before he entered appellant's residence to make a buy and again immediately after he left the residence. He was under the constant surveillance of the police except for the time he was actually inside the residence. This was sufficient corroboration, at least, to provide, in part, a factual basis for the magistrate's conclusion that the informant was credible and his information reliable. The three controlled purchases so decreased the opportunity for falsehood as to provide the requisite indicia of reliability. See United Statesv. Rodgers, 732 F.2d 625 (8th Cir. 1984); Dannelley v. State,397 So.2d 555 (Ala.Cr.App.), cert. denied, 397 So.2d 577 (Ala. 1981);People v. Exline.
Accordingly, in applying the totality-of-the-circumstances test in the case sub judice, we find that the affidavit was sufficient to support a finding of probable cause for the issuance of the search warrant. We further find that the search warrant, the affidavit, and the manner in which the search warrant was issued and executed were proper and met the requirements of § 15-5-13, et seq., Code of Alabama 1975. Finally, appellant's claim that the affiant knowingly and intentionally made false statements or made such with reckless disregard for the truth is unsupported by the evidence. The trial court properly denied the motion to suppress.
 II
Appellant contends that the court committed reversible error in denying his motion to "strike the jury venire and to order a new jury venire after the state struck all *Page 884 
those of the black race from the jury." He relies on Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which, inter alia, holds that a state denies a black defendant equal protection of the law when it puts him on trial before a jury from which members of his race have been purposely excluded on account of race.
An objection to an alleged Batson violation must be timely. Timeliness in this instance would indicate that the objection should be made early enough to give the trial court sufficient time to take corrective action without causing undue delay if it deemed action necessary. We have held that the proper time to raise such an objection is after the peremptory strikes have been made, but prior to the jury's being sworn. Kemp v. State,516 So.2d 848 (Ala.Cr.App. 1987); Raines v. State, 515 So.2d 82
(Ala.Cr.App. 1987); Thornton v. State, 513 So.2d 83 (Ala.Cr.App. 1987); Swain v. State, 504 So.2d 347 (Ala.Cr.App. 1987). InSwain, 504 So.2d at 349, we quoted with approval Williams v.State, 712 S.W.2d 835 (Tex.Dist.Ct.App. 1986), where the court held: "In light of Batson, the proper time to raise such an objection was after the peremptory strikes had been made, but prior to the jury being sworn." The Fifth Circuit Court of Appeals addressed this issue in United States v. Erwin,793 F.2d 656 (5th Cir.), cert. denied, 479 U.S. 991, 107 S.Ct. 589,93 L.Ed.2d 590 (1986). In Erwin, the defendants waited a week after the jury was selected before moving to strike the panel. The jury had not yet been empaneled, the trial was about to begin, and all the unselected veniremen had been released. The Erwin court, in holding the motion untimely, stated: "The Court in Batson
envisioned that a motion to strike would be made promptly, probably before the venire was dismissed. See [476 U.S. 79], at [99-100] n. 24, 106 S.Ct. [1712] at 1724 n. 24." 793 F.2d at 667. In so holding, the court placed emphasis on the difficulties such untimeliness would cause the court and the great delay in starting the trial if a new venire had to be drawn and summoned. The court also noted that the defendants offered no justification for their delay in filing the tardy motion. In quoting Erwin with approval in Edwards v. State, 515 So.2d 86, 96 (Ala.Cr.App. 1987), we stated: "When the objection is not timely made, the trial court is deprived of the opportunity to remedy the error and save the case. As a matter of common sense, the court should have the chance to hold a Batson hearing, and, if necessary, start the selection procedure over." In further addressing this issue, the Fifth Circuit Court of Appeals in United States v.Forbes, 816 F.2d 1006, 1011 (5th Cir. 1987), stated:
 "The `timely objection' rule is designed to prevent defendants from `sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten. Furthermore, prosecutorial misconduct is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson. After trial, the only remedy is setting aside the conviction. Batson, 106 S.Ct. at 1725. This is an equally important justification for the `timely objection' rule. [Footnote omitted.]"
In the instant case, there was no timely objection. Defense counsel objected only after the jury was empaneled and sworn. The record shows, in pertinent part, the following:
 "THE COURT: Are you ladies and gentlemen ready to select your jury?
"(No response.)
 "THE COURT: Any additional questions or anything else you want the Court to do prior to that?
"(No response.)
"THE COURT: All right. Select your jury, then.
 "MR. FLACK [defense counsel]: Your Honor, could we have a ten minute recess?
"THE COURT: No, sir.
"MS. McDOUGALD: Each side has seventeen strikes.
 "(At this time, a jury of twelve and two alternate jurors were selected, placed in the jury box and administered the oath of *Page 885 
service by the Circuit Clerk's representative, Ms. Jean McDougald.)"
The Court then gave some preliminary instructions to the jury and entered into a prolonged discussion with members of the jury concerning their sequestration and problems that might be encountered in arranging for their welfare. A brief recess was held and the record shows the following:
 "(Whereupon, there was a brief recess, after which the following proceedings were had and done of Record outside the presence of the jury:)
 "THE COURT: Gentlemen [defense counsel] and Ms. Brooks [prosecuting attorney], as we know, we are sequestering this jury. It would be somewhat easier for them if we permitted them to go and pick up their things instead of having to have someone come and do it for them. Any objection to that?
"MS. BROOKS: The State has none, Your Honor.
"MR. BELL [defense counsel]: No.
 "THE COURT: So what we will do is take somewhat of a longer lunch recess, permit them to go make whatever arrangments they want to with the caveat about not discussing the case or looking at anything and so forth.
 "MR. BELL: Your, Honor, we have a couple of — We would like to make a couple of motions, Your Honor.
"THE COURT: All right, sir.
 "MS. BROOKS: Thank you. (Response made upon receipt of paper from Mr. Flack.) [The paper referred to is a motion pertaining to the alleged discriminatory jury strikes and is found at page 1895 of the record.]
"MR. FLACK: I had to add the last one.
"MS. BROOKS: That's okay.
"THE COURT: Anything else?
"(No response.)
 "THE COURT: I suppose since the jury is in the box, there is no ruling required of the Court. You are just doing this for the Record, I suppose.
"MR. FLACK: Yes, sir, we . . .
 "THE COURT: Let the Record show this was presented to the Court after the jury was selected.
 "MR. BELL: We would like a ruling on it, Your Honor, because we would like at this point —
 "(At this time, the Court exited the Courtroom and there was a brief recess. . . .)"
Thereafter, appellant's attorneys attempted several times during the trial to raise the issue, but the trial judge refused to entertain the motion, taking the position that it was untimely. The trial judge wrote at the bottom of the motion that it had been filed after the jury had been selected and sworn. The trial court held a hearing on the motion after the trial, but adhered to its original position that it had been filed too late.
Appellant's attorneys argue that they were attempting to raise the Batson issue before the jury was sworn and that the jury was sworn without their knowledge. The record simply does not support their argument. It is clear that the issue was not raised until after the jury had been selected, sworn, given instructions, and allowed by agreement to go home and get their personal belongings in preparation for a period of sequestration. It is obvious from the record that the remaining members of the venire, who were not selected for the jury, had been released. The trial court was faced with the same difficulties as those that confronted the trial court in Erwin — the great delay in starting the trial if a new venire had to be drawn. The undue delay and disruption of the legal process which would be caused by permitting the issue to be raised in such an untimely fashion are obvious. Requiring the objection to be made before the jury is sworn and the remainder of the venire released does not appear to us to be an unreasonable requirement. Of course, if a defendant is prevented, through no fault of his own, from making a timely motion or objection, it would be a different situation; however, even though appellant contends this occurred in the instant case, the record does not support his contention. We agree *Page 886 
with the trial court that appellant's motion was untimely, and, there being no justification for the delay in its filing, we conclude that Batson does not apply to this case.
 III
Appellant questions the sufficiency of the state's evidence to support his conviction. He raised the question of the sufficiency of the evidence by motions to exclude and for judgment of acquittal upon the close of the state's case. These motions were denied.
In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979); Bass v. State,55 Ala. App. 88, 313 So.2d 208 (1975). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State,387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala. 1980); McBryar v. State, 368 So.2d 568 (Ala.Cr.App.), cert. denied, 368 So.2d 575 (Ala. 1979); 7 Ala. Digest, Criminal Law, Key No. 1159.3. The action of the trial court in denying a motion for acquittal, in denying a motion to exclude the evidence, in refusing to give the affirmative charge, and in denying a motion for a new trial must be reviewed by determining whether there existed legal evidence before the jury, at the time the motions were made, from which the jury by fair inference could have found the defendant guilty. Thomas v. State, 363 So.2d 1020
(Ala.Cr.App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App. 1983); Thomas v. State.
After examining the evidence and applying the proper standards of review in the case sub judice, we find that there was sufficient evidence presented by the state to allow the jury to conclude beyond a reasonable doubt that appellant was guilty of trafficking in cocaine, in violation of § 20-2-80 (2)(a), Code of Alabama 1975.
 IV
We have examined all other issues raised by appellant on appeal and, finding no merit in them, deem it unnecessary to discuss them in this opinion.
For the above reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.