[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 425 
Charles Raymond Whitehead was indicted for the offense of unlawful distribution of the controlled substances methylphenidate and hydromorphone, in violation of §13A-12-211, Code of Alabama 1975.
On October 31, 1990, the prosecution filed a motion to consolidate three other cases pending against Whitehead with the present offense. At the hearing on this motion, the prosecution withdrew its request to consolidate one of the three other cases, and the court allowed the consolidation of only case no. 90-290, which charged Whitehead with the possession of controlled substances, with the present offense of unlawful distribution of controlled substances.
On April 17, 1991, Whitehead pleaded guilty to the present offense of unlawful distribution of controlled substances, and the prosecution agreed to nol-pros both the consolidated case of possession of controlled substances and another case pending against Whitehead. On July 26, 1991, Whitehead withdrew his guilty plea and only the present offense of unlawful distribution of controlled substances was set for trial.
The jury found Whitehead guilty of the unlawful distribution of controlled substances as charged in the indictment, and the court sentenced Whitehead as a habitual offender to a term of 12 years in the penitentiary. Three issues are raised on appeal.
 I
Whitehead contends that the trial court committed reversible error in denying his motion to suppress evidence retrieved during the execution of a search warrant because 1) the warrant was executed after the date typed on the warrant, and 2) the warrant was substantiated by hearsay received from an unreliable informant.
 A.
Prior to trial, the court held a hearing on Whitehead's motion to suppress. The State elicited testimony from the jury who issued the warrant during which the following occurred:
 "Q I will show you what's been marked as State's Exhibit Number A which is a copy of a search warrant that was obtained at that time and ask if you see your signature anywhere on that —
"A Yes, sir.
"Q — document?
"And where would that be?
"A It would be on the bottom of the document.
 "Q Okay. I will direct your attention to the language where it says, you are hereby commanded to search the place named or the premises or property specified, making the search between the hours of; and the document reads, 10:00 p.m. Eastern standard time on April 27th, 1990, and five a.m. on March 28, 1990.
 "Was that language that way at the time that you signed the warrant? *Page 426 
 "A Yes. There appears — on this copy to have been no changes to this.
 "Q Okay. What was the intent at the time that you signed the warrant, please?
 "A The intent was 10:00 p.m. E.S.T. on April 27th, 1990, and five a.m. on April the 28th of 1990.
 "Q So the March date that would be on the warrant would simply be a typographical error?
"A Yes, sir. It's a typographical error."
Typographical errors or misdescriptions in a search warrant do not necessarily render the warrant fatally defective. InGrantham v. State, 580 So.2d 53 (Ala.Cr.App.),cert. denied, 580 So.2d 53 (Ala. 1991), we held that a search warrant which incorrectly stated the street address of the premises to be searched was not invalid where the officer who participated in the execution of the warrant had previously been to the premises to be searched and could identify those premises. A search warrant, moreover, was not defective because it erroneously referred to a dirt and gravel road leading to the defendant's home as being a paved road. Korreckt v.State, 507 So.2d 558 (Ala.Cr.App. 1986).
The expiration of four days between the issuance and execution of a search warrant did not vitiate the warrant inCabble v. State, 347 So.2d 551 (Ala. 1977). Furthermore, the failure of the issuing judge to use the words "at any time of the day or night" or words of similar import in a search warrant did not invalidate the warrant where the record demonstrated that the trial judge issued the warrant in the middle of the night knowing that the search would be immediately executed. Gamble v. State, 473 So.2d 1188
(Ala.Cr.App.), cert. denied, 473 So.2d 1188 (Ala. 1985).
Applying these principles to the instant case, we therefore hold that the typographical error of "March 28th, 1990" instead of "April 28th, 1990" in the search warrant did not render the warrant fatally defective where the record clearly demonstrated that the trial judge issued the warrant on April 27, 1990, knowing that the search would be executed between the hours of 10:00 p.m. on the evening of April 27, 1990 and 5:00 a.m. on April 28, 1990, and the search was duly executed during that time period.
 B.
Whitehead also contends that the search warrant was defective because it was secured by the use of hearsay and an unreliable informant.
Officer Daryl Williams of the Phenix City Police Department testified at the suppression hearing that, in April 1990, he was contacted by Charles Cotney who offered to give information regarding drug sales by Whitehead in exchange for recognition to the district attorney's office.
According to Williams, Cotney informed him that Cotney could purchase both Ritalin and Dilaudid at Whitehead's residence. After working out the details, Williams gave Cotney $180 in marked bills to make a purchase of drugs from Whitehead. Prior to passing the bills to Cotney, Williams made a photocopy of each one for identification purposes.
On April 27, 1990, Williams, accompanied by Officer David Glisson of the Muscogee County, Georgia, Sheriff's Department, drove Cotney to Whitehead's residence to make the drug buy. Both officers stated that they drove up to Whitehead's residence and that Cotney was searched before being given the marked funds. Their search of Cotney indicated that he did not possess drugs when he entered Whitehead's residence. Cotney then proceeded to Whitehead's home and returned after a few minutes with two Dilaudid tablets and six Ritalin tablets. Williams stated that they then left the area and again searched Cotney and discovered that the $180 in marked bills was gone.
Williams secured a search warrant for Whitehead's residence later that day based upon Williams's affidavit, which stated that Williams, in the past 72 hours, made a controlled buy of Ritalin/Dilaudid from Whitehead at Whitehead's residence using a reliable informant who was searched prior *Page 427 
and after the controlled buy. The affidavit further stated that after the drug purchase, the Ritalin and Dilaudid were turned over to Williams and that the monies used to purchase the listed drugs were photocopied prior to the controlled buy.
At 12:45 on April 28, 1990, the search warrant was executed at Whitehead's residence. Whitehead was searched pursuant to the warrant, and the officers discovered on Whitehead's person the marked money in the amount of $180 given to Cotney to complete the drug buy. Whitehead was then arrested and charged with the unlawful distribution of controlled substances.
According to Whitehead, because Williams was unable to see or hear what transpired after Cotney entered Whitehead's residence, all the information received was inadmissible hearsay. Whitehead further posits that the fact that Cotney did not previously give information to the police made him an unreliable source for the search warrant affidavit. We disagree.
The standard used to evaluate probable cause based on an informant's tip is the "totality of the circumstances" test articulated in Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):
 "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."
462 U.S. at 238, 103 S.Ct. at 2332.
Where, moreover, subsequent observation establishes that an informant had reliable information, specific experience of the informant's past reliability is not necessary to support a finding of probable cause on an informant's information.United States v. Thomas, 536 F. Supp. 736 (M.D.Ala. 1982).
For example, where an informer works in tandem with a law officer, the reports of the informer may be deemed credible for search warrant purposes even where certain material aspects of the informer's activities are without the officer's personal knowledge or observation. Williams v. State,530 So.2d 881 (Ala.Cr.App.), cert. denied, 530 So.2d 881 (Ala. 1988).
The fact that an informant did not previously give information did not make him an unreliable source for a search warrant affidavit. McCray v. State,501 So.2d 532
(Ala.Cr.App. 1986), cert. denied, 501 So.2d 532 (Ala. 1987). Hearsay will support a finding of probable cause to issue a search warrant if there is a substantial basis for crediting the hearsay. Mauldin v. State,402 So.2d 1106 (Ala.Cr.App. 1981).
Consonant with these principles, we therefore hold that under the circumstances set forth in the affidavit, including the hearsay testimony of an informant who had not previously given information to the police, there was probable cause to believe that contraband or evidence was located in Whitehead's residence based on the subsequent observation of police officers who worked in tandem with the informant to secure a drug buy from Whitehead, even where certain material aspects of the informant's activities were without the officers' personal knowledge or observation. Because we deem the informant's information reliable based upon the police officer's subsequent observation and corroboration, we likewise find a substantial basis for crediting the hearsay testimony of the informant in the officer's affidavit.
 II
Whitehead, who is white, contends that the trial court erred by allowing the State to strike 9 of the 14 potential black jurors over his objection based on Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The prosecution gave its reasons for striking 9 blacks from the jury panel. The first 7 black jurors were struck because they had been convicted of municipal violations. Several white jurors were also *Page 428 
struck. The eighth strike was based upon information that the prospective juror had a relative who had been convicted of a drug offense. The final strike challenged was juror no. 23. He indicated that he was single. According to the prosecution, this juror was the first single person struck of those left on the venire.
The evidence shows that the State struck non-black jurors for substantially the same reasons as black jurors. This is, therefore, evidence of neutrality which overcomes the presumption of discrimination. Ex parte Branch,526 So.2d 609 (Ala. 1987); Jackson v. State, 549 So.2d 616
(Ala.Cr.App. 1989). And, strikes based upon prior criminal convictions have been held to be based upon race-neutral reasons. Pollard v. State, 549 So.2d 593 (Ala.Cr.App. 1989); Jackson, supra.
The record indicates that the State was prepared to strike as many single persons as possible from the venire. This court noted, in Bedford v. State, 548 So.2d 1097
(Ala.Cr.App. 1989), that using a peremptory challenge to remove a single person from the jury does not violate the Equal Protection Clause. The appellant has not provided any authority to the contrary.
Finally, strikes based upon previous records of either a member of the venire or a relative of a member of the venire are deemed to be based upon consideration other than race.Fearn v. City of Huntsville, 568 So.2d 349
(Ala.Cr.App. 1990), cert. denied, 568 So.2d 349 (Ala. 1990).
 III
Whitehead contends that the trial court committed reversible error in allowing the State to elicit testimony from a police officer that three persons appeared at Whitehead's residence with either money or property in their hands while the search warrant was being executed. Whitehead argues that this error was compounded by the fact that the prosecutor was allowed to discuss, in closing argument, the appearance of these three individuals at Whitehead's residence.
Whitehead filed a motion in limine prior to trial in which he sought to exclude testimony that while officers were executing the search warrant, three individuals presented themselves on Whitehead's doorstep for use in an exchange for narcotics. The motion was granted in part, in that witnesses were instructed not to mention any conversation had during these three occurrences. Nevertheless, the jury was allowed to hear testimony from a police officer who assisted in executing the search warrant, as follows:
 "Q Did you have an occasion about 12:45 a.m. on April the 28th to participate in the search of Raymond Whitehead's residence here in Phenix City?
"A Yes, sir, I did.
 "Q Okay. At the time that you went in, were you going in with other officers?
"A Yes, sir.
 "Q Let me ask you, please, and be specific with your questions — after the time that the agents got to the door and you got inside the residence, did anyone else come up to that residence after you were in the house?
 "MR. KEMMER: Your Honor, before he answers, could I approach?
"THE COURT: Certainly.
"(Bench discussion, outside hearing of jury.)
 "MR. KEMMER: Your Honor, I believe the officer is about to testify about other individuals approaching the Whitehead residence on the — I guess it would be the early morning hours of April the 28th, and I will object to any testimony even concerning people coming to the residence in that what they are implying is that those people were coming there to purchase drugs. Mr. Whitehead was not involved in any of the transactions by the admission of the District Attorney prior to trial, and that these are collateral agents of other individuals and police officers were tending to show that Mr. Whitehead was — because these people came to his house and people dealt with the police officers *Page 429 
that — on the occasion and made an indictment Mr. Whitehead was on.
 "THE COURT: The objection is sustained as to anything the witness said to those people and the people said.
"MR. WALDREP: As to your ruling. Thank you.
"(Bench discussion concluded.)
 "Q After you were in the house, how many people came to that residence?
"A Three.
 "Q Did they all come at once or would you describe the manner in which they came; the time sequence, in which they came?
 "A No, sir. They didn't come at once. They didn't come with each other. They came within a 30-minute period; about a 30-minute period; at different times.
 "Q Okay. Did any of these individuals come to that residence carrying any type of property?
"A Yes, sir.
 "MR. KEMMER: Your Honor, we object on the same grounds as raised at bench just minutes ago.
"THE COURT: Overrule, as to this question.
 "Q What property was brought to that residence at that time?
"A Two of the individuals had money.
 "MR. KEMMER: Your Honor, I am going to object; the same grounds as we raised earlier.
"THE COURT: Sustained.
"MR. WALDREP: Your Honor, could we approach?
"THE COURT: Sure.
"(Bench discussion, outside hearing of jury.)
 "MR. WALDREP: I am going to ask a more specific question that I think will clear up —
 "MR. KEMMER: I want to move for a mistrial. I think we had covered this prior to trial that there was not going to be any testimony regarding people coming up to the door with money, what they — it's obvious what they are trying to do is show that since there were other people arriving with money and talking about narcotics agents there, that . . . the incidents claimed in the indictment must be true; that this jury is going to be prejudiced by that testimony from this officer, and I would ask for a mistrial.
 "THE COURT: Objection is sustained. Motion for Mistrial will be denied. The prior objection is sustained to anything that he was not —
 "MR. WALDREP: Not visible; yes, sir. I am going to clear that up.
"THE COURT: Okay. Go ahead.
"(Bench discussion, concluded.)
 "Q Okay. Agent, if you would, specifically [sic] property that was in their hands that you could see before you had any contact with them other than you seeing them. Okay. What property did you see any individual come with?
"A Two had money.
"Q How did — how did they have money?
 "A In their hand; one — the first guy had $30; the second guy had [$]25, and the third fellow had a VCR."
Subsequently, during the prosecutor's closing arguments, the following occurred:
 "MR. WALDREP: . . . . . . . 12:45 a.m. The middle of the night. They are in an unmarked cars [sic], plain clothes, whatever. They go in. They make the arrest; they are searching the house, [Mr. Waldrep knocking]. They go to the door, and there is somebody at the door, a quarter until one in the morning, with money. Within minutes after that, ten, fifteen minutes, they are back searching the house again, [Mr. Waldrep knocking]; somebody else.
 "MR. KEMMER: Your Honor, I am going to object. I don't think the officer testified as to the time frame or people knocking on doors or whatever.
"THE COURT: Objection is overruled."
An officer making an arrest is competent to testify as to what took place at the time the arrest was being made.Nichols v. State, 27 Ala. App. 435, 173 So. 652 (1937). *Page 430 
Hence, because the three individuals appeared at Whitehead's door during the time when Whitehead's residence was being searched and Whitehead was being arrested, the officer's limited testimony as to what the three individuals were visibly carrying in their hands when they knocked at Whitehead's door would be admissible. The prosecutor's argument to the jury concerning this testimony would likewise constitute an appropriate argument based upon facts in evidence.
We note that the trial court excluded any testimony as to what these three individuals said to the officers, who were dressed in plain clothes, and the court excluded any testimony as to what the officers said or did to these three individuals. Hence, no reversible error occurred.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.