TYSON, Judge.
Charles Wayne Wilson was indicted on October 29,1981, for attempted murder. A motion to quash the indictment was granted on December 9,1981, because the indictment failed to state an offense. The appellant was then re-indicted for attempted murder on March 15, 1982.
On April 9, 1982, the appellant filed a plea of former jeopardy. The trial court denied the plea after hearing the arguments of counsel.
The appellant’s trial began on May 18, 1982, and the jury found him “guilty as charged in the indictment.” On June 10, 1982, following a habitual offender hearing, the appellant was sentenced to 40 years in the state penitentiary.
On July 3, 1981, Bascom Woodcock was sitting in his truck with his seven year-old son. The truck was parked, along with some other vehicles, near Murder Creek in Escambia County. James Parker was standing next to the truck talking with Woodcock.
At approximately 4:30 or 5:00 p.m., Woodcock saw the appellant’s vehicle approaching from the direction of the creek. Bruce McCall and John Christopher were with the appellant. As the appellant’s vehicle approached, Woodcock moved his truck to the side of the road because it was blocking the road.
When the appellant’s vehicle pulled up next to Woodcock’s truck, the appellant stopped his vehicle and began cursing Woodcock. At this point, Woodcock told the appellant to “go on.” (R. 11).
As Woodcock started to drive away, he turned around and saw the appellant’s arm extended through the rear window of the appellant’s vehicle. The appellant was holding a .25 automatic pistol.
Woodcock and his son ducked down in the seat as the appellant fired two shots through the rear window of Woodcock’s truck. Woodcock then fired his gun at the appellant who then fired two more shots at Woodcock’s truck.
The appellant left and Woodcock went home and called the police.
I
The appellant contends that jeopardy attached to him when the indictment was quashed after a jury had been impaneled, duly sworn and the charges against him presented to this jury. We agree with the appellant. Both the federal courts and the state courts in Alabama recognize that jeopardy attaches when a jury has been impaneled and, as here, duly sworn. Ex *150 Parte Collins, 385 So.2d 1005 (Ala.1980); Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).[1]
“However, simply because jeopardy had attached does not prohibit subsequent proceedings against an accused.” Ex Parte Collins, supra.
In Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), Mr. Justice Black explained that:
“The double-jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible .... [T]he purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.... It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. What has been said is enough to show that a defendant’s valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public’s interest in fair trials designed to end in just judgments.”
United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824) was the landmark decision that construed the Double Jeopardy clause of the United States Constitution. In that opinion, Mr. Justice Story wrote:
“[T]he law has invested Courts of Justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.”[2]
See also Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).
There is no definite test to determine what constitutes “manifest necessity” and under which particular circumstances, the ordering of a mistrial is proper. Judges “are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; .... But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.” Wade v. Hunter, supra; Illinois v. Somerville, supra.
In this cause, the trial judge quashed the defective indictment just after the jury had been impaneled, sworn, and the charges presented to them. No testimony had been presented.
Because the original indictment failed to allege an offense, the trial judge’s decision *151 to quash the indictment and order a mistrial was correct. If he had allowed the trial to proceed to a verdict, the judgment certainly would have been reversed on appeal.
The appellant contends in his brief that to quash an indictment because of a variance in the indictment cannot be justified by the “manifest necessity doctrine.” However, the courts have recognized that there is a difference between a variance which can be corrected by amendment and a material variance which cannot be corrected except by a mistrial and a new indictment. Illinois v. Somerville, supra. If the trial judge had allowed the appellant’s trial to continue, with the knowledge that the judgment would have been overturned on appeal, it would have been a senseless waste of the state’s resources. Thus, for these reasons, we believe the decision to declare a mistrial was required by “manifest necessity.”
The facts in Illinois v. Somerville, supra, are very similar to the ones at bar. In that opinion, Mr. Justice Rehnquist cited Gori v. U.S., 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).
“Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant’s consent and even over his objection, and he may be retried consistently with the Fifth Amendment.”
Illinois v. Somerville, supra.
In this case, the appellant’s interest in having his trial proceed to a verdict was outweighed by the public’s interest in the administration of justice. We hold that overruling appellant’s plea did not violate the provisions of either the U.S. or State of Alabama Constitutions pertaining to double jeopardy.
II
The appellant claims reversible error was committed when the trial judge allowed the state to cross-examine the appellant concerning his prior criminal convictions.
“As affecting his credibility, a witness may be examined touching his conviction for a crime involving moral turpitude, and his answers may be contradicted by other evidence.”
Ala.Code § 12-21-162(b) (1975).
The appellant was questioned concerning his prior convictions for assault with intent to murder and theft of property in the second degree. Both of these crimes involve moral turpitude. See McClendon v. State, 373 So.2d 1249 (Ala.Cr.App.1979); Matthews v. State, 51 Ala.App. 417, 286 So.2d 91 (1973); Ragland v. State, 238 Ala. 587, 192 So. 498 (1939); C. Gamble, McElroy’s Alabama Evidence § 145.01(9) (3d. ed. 1977).
Therefore, the trial judge properly allowed the state to cross-examine the appellant concerning his past criminal record for assault with intent to murder and theft of property in the second degree.
Ill
The appellant contends the trial court erred when it refused to charge the jury on the lesser included offenses under assault in the first degree. Any additional charges requested by either party must be in writing. Ala.Code § 12-16-13 (1975).
“In Smith v. State, 53 Ala.App. 657, 303 So.2d 157, this court said:
‘[WJhere a party desires the court to extend its oral charge to cover some applicable law in the trial of a case, his remedy is to request a written charge on the subject, which if refused would protect the record and present the matter to the Appellate Courts ... [I]f the objection is to the court’s refusal or omission to charge on a particular subject applicable under the evidence the procedure is by way of a requested written charge.
‘A failure to pursue [this remedy], if proper and applicable to the case, is a waiver of a review by this court as to the matters in question.’ ”
Hamilton v. City of Birmingham, 396 So.2d 120 (Ala.Cr.App.1980), reversed on other *152 grounds, Ex parte Hamilton, 396 So.2d 123 (Ala.1981).
Therefore, the failure of the trial court to charge the jury on the lesser included offenses under assault in the first degree is not subject to review on this appeal.
IV
The appellant contends the Habitual Offender Act violates the Equal Protection, the Cruel and Unusual Punishment, and the Ex Post Facto clauses of the United States Constitution.
This court has held previously that the Habitual Offender Act does not violate the Cruel and Unusual Punishment Clause of the United States Constitution.
“As this court stated in Ex parte Messelt, Ala.Cr.App. 351 So.2d 636, ‘Where the punishment prescribed by the legislature is severe merely by reason of its extent, as distinguished from its nature, there is no collision with the Eighth Amendment.’ ”
Watson v. State, 392 So.2d 1274 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1981). “[I]t is our judgment that the Alabama Habitual Felony Offender Act, § 13A-5-9, supra, has not been unconstitutionally applied in a retroactive manner so as to make it an ex post facto law.” Williams v. State, 393 So.2d 492 (Ala.Cr.App.1981).
The appellant has shown no evidence of discrimination or selective enforcement in the application of the Habitual Offender Act. Therefore, we see no violation of the Equal Protection Clause. Williams v. State, supra.
We have examined the record in this cause and find it free of error. Therefore, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.

. However, we must note that the indictment under which the appellant was originally charged could not have supported a conviction because it failed to allege an offense and therefore, was void. This court stated in Pinson v. State, 30 Ala.App. 153, 2 So.2d 339 (1941) that, “A defendant is never in jeopardy, when the indictment against him is so invalid, that a judgment upon it would be annulled on appeal, no matter what may be the stage of the prosecution when, for that reason, it is quashed. Weston v. State. 63 Ala. 155."

. Section 12-16-233, Code of Alabama 1975 provides:
“The court or presiding judge in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial or without the consent of the parties, when, in the opinion of the court or judge, there is a manifest necessity for the discharge or when the ends of justice would otherwise be defeated. In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial, and no person shall gain any advantage by reason of such discharge of the jury.”