Ellis McGruder was convicted of the unlawful possession of cocaine in violation of Ala. Code (1975), § 13A-12-212. He was subsequently sentenced to imprisonment for three years and was fined $500.00. Three issues are raised in this appeal from his conviction.
 I
McGruder contends that the evidence was insufficient to support his conviction.
On December 12, 1987, Deputy Joe Watson of the Houston County Sheriffs Department received from a confidential informant information that a black male residing in the rear apartment at 223 West Crawford Street, Dothan, Alabama, had cocaine in his possession. The informant also stated that the black male drove a brown, four-door Oldsmobile automobile, bearing Alabama license plate 38DB 296.
Deputy Watson and his informant then went to that address, where Watson observed that the apartments were situated as previously described by the informant and that the brown Oldsmobile was present. They did not enter the apartment in which the informant stated that he had seen the cocaine. Deputy Watson returned to his office, while other officers placed the apartment under surveillance. Watson was unable to obtain either the name of the lessee of the apartment or the name in which the Oldsmobile was registered, but he did procure a search warrant for the apartment.
Meanwhile, two black males, later identified as Anthony Potter and Buford McRay, left the apartment and drove away in the brown Oldsmobile. The officers on the scene stopped the Oldsmobile after it had traveled a short distance. Cocaine was found in the vehicle and on the person of Potter, and both Potter and McRay were arrested. A key to the apartment was taken from McRay. The Oldsmobile was subsequently found to be registered to Potter.
After the arrest of Potter and McRay, the apartment was searched pursuant to the warrant obtained by Deputy Watson. A sandwich bag containing marijuana was found on top of a dresser in one of the bedrooms. An expired driver's license issued to Ellis McGruder and a Tylenol bottle containing.37 grams of crack cocaine were found in the pocket of a jacket hanging in the closet of this same bedroom. This jacket bore a garment tag reading "National Linen Service, Dothan Country Club." *Page 1139 
Deputy Watson testified that there were certificates on the wall of this bedroom with McGruder's name on them. Also in this bedroom, Watson found mail addressed to McGruder, pictures of McGruder, and a name tag from the Dothan Country Club with McGruder's name on it. However, Deputy Donald Valenza, who assisted in the execution of the warrant and who actually found the Tylenol bottle containing cocaine, could not say whether there were any personal effects of McGruder's in the bedroom in which the contraband was found. According to Watson, another bedroom contained the personal effects of McRay.
McGruder was not present at the time the apartment was searched, but was arrested by Deputy Watson on February 24, 1988. McGruder was properly advised of his Miranda rights and he thereafter informed Watson "that he didn't live [at the West Crawford apartment] anymore. He did live there when we searched the place, but he [McGruder] had moved a short time after."
McGruder did not present an affirmative defense at trial. He did elicit from Deputy Watson the information that Burford McRay was 20 years old on December 12, 1987, and would not have been of sufficient age to purchase alcoholic beverages, implying that the expired driver's license was being used by McRay for that purpose. He also established through Deputy Watson that a valid driver's license had been issued to him (McGruder) on May 14, 1987. (The license found during the search of the West Crawford Street apartment bore an expiration date of May 16, 1987.)
In a prosecution for the possession of illegal drugs, the state need not prove that the defendant had actual physical possession of the drugs, for possession may be either actual or constructive. Radke v. State, 52 Ala. App. 397, 398,293 So.2d 312, 313, affirmed, 292 Ala. 290, 293 So.2d 314 (1974). "An inference of constructive possession arises when the controlled substance is found on premises owned or controlled by the accused." Donahoo v. State, 505 So.2d 1067, 1070 (Ala.Cr.App. 1986).
McGruder maintains that the state failed to prove that he had sufficient "control" over the premises from which to infer that he had constructive possession of the cocaine. This same issue was raised in Mitchell v. State, 395 So.2d 124 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 127 (Ala. 1981), wherein we stated:
 "A review of the evidence convinces us that this was a question for the jury under the facts of this case. The jury could reasonably infer that the defendant lived or resided at the house where the drugs were found from the concurrence of three facts: (1) The lease was in the defendant's name as was a cable T.V. contract; (2) the electric bill was in the defendant's name; and (3) the presence of the defendant's two children at the house. This inference is especially compelling when considered in conjunction with the fact that there was no evidence that the defendant did not reside in this house."
395 So.2d at 126 (emphasis added).
The question of whether McGruder resided at the West Crawford apartment was, like the question in Mitchell, a question for the jury. Although there was no evidence of a lease or of utility bills in McGruder's name, the state did establish that the room in which the cocaine was found also contained a large number of McGruder's personal effects. Moreover, McGruderadmitted to Deputy Watson that he had resided in the apartment on the date of the search. These facts, coupled with the "fact that there was no evidence that [McGruder] did not reside in this [apartment]," id., would support the jury's reasonable inference that McGruder did reside in the apartment. See alsoMcCord v. State, 373 So.2d 1242, 1243 (Ala.Cr.App. 1979).
A conviction for the possession of illegal drugs cannot be based on constructive possession alone. Temple v. State,366 So.2d 740, 741 (Ala.Cr.App. 1978). Where, as in the present case, the state relies on constructive possession, it is necessary that the prosecution prove that the defendant *Page 1140 
had knowledge of the presence of the illegal drugs. Clark v.State, 527 So.2d 161, 163 (Ala.Cr.App. 1987); Shaneyfelt v.State, 494 So.2d 804, 805 (Ala.Cr.App. 1986); Temple v. State,366 So.2d at 741. This "knowledge may be established by circumstantial evidence. Walker v. State, 356 So.2d 674, 675
(Ala.Cr.App. 1977), cert. denied, 356 So.2d 677 (Ala. 1978)."Temple v. State, 366 So.2d at 741. However, "[w]here the accused is not in exclusive possession [of the premises upon which illegal drugs are found], this knowledge may not be inferred without other evidence that connects [the] defendant with the contraband." Shaneyfelt v. State, 494 So.2d at 805.
"[T]he kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case."Temple v. State, 366 So.2d at 743. "Where drugs are found on premises of which the defendant was in nonexclusive possession, the fact that they were found among or near his personal belongings may be a circumstance which is sufficient to link him with the possession of those drugs." Gary v. State,473 So.2d 604, 605 (Ala.Cr.App. 1985).
The cocaine was found in a jacket in the closet of a bedroom containing many of McGruder's personal effects. This jacket was identified as "some kind of bus boy jacket" and bore a tag indicating that it was the apparel of an employee of the Dothan Country Club. A Dothan Country Club name tag with McGruder's name on it was also found in this bedroom. It is reasonable to infer that McGruder was or had been employed by the Dothan Country Club,[1] that the jacket was his, and that he knew of the presence of the cocaine in the pocket of the jacket. Reviewing the evidence in this case under the principles set forth at length in Dolvin v. State, 391 So.2d 133 (Ala. 1980); White v.State, 546 So.2d 1014 (Ala.Cr.App. 1989); and Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979), we are convinced that the evidence is sufficient to support McGruder's conviction.
 II
McGruder asserts that the search warrant for the apartment at 223 West Crawford Street was invalid. His argument appears to be twofold: (1) Probable cause cannot be established solely by information supplied by an undisclosed informant[2] and (2) the state failed to establish the reliability of the informant.
The affidavit in this case recites that the affiant, Deputy Watson, was told by a "reliable informant" that said informant had been in the "rear apartment" at 223 West Crawford Street "within the past *Page 1141 
72 hours" and had observed a black male[3] in that apartment "in possession of cocaine." The affidavit also recites: "Affiant states that this informant has furnished information in the past that has proven reliable, true and correct. Affiant further states that all information received from this informant has been proven to be reliable, true and correct."
The information supplied by the informant was clearly the sole basis for the issuance of the search warrant.[4] In McCray v.Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the United States Supreme Court stated:
 "[W]e have repeatedly made clear that federal officers need not disclose an informer's identity in applying for an arrest or search warrant. As was said in United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 [1965], we have 'recognized that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant," so long as the magistrate is "informed of some of the underlying circumstances" supporting the affiant's conclusions and his belief that any informant involved "whose identity need not be disclosed * * * was 'credible' or his information 'reliable.' " Aguilar v. State of Texas, [378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964)].' (Emphasis added.)"
386 U.S. at 311, 87 S.Ct. at 1062. Accord, Moore v. State,340 So.2d 882, 884 (Ala.Cr.App.), cert. denied, 340 So.2d 885 (Ala. 1976). See also Mauldin v. State, 402 So.2d 1106, 1109
(Ala.Cr.App. 1981).
In determining whether a search warrant should be issued on the basis of information supplied by a confidential informant,
 "[t]he task of the issuing magistrate [or judge] is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate [or judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed."
Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332,76 L.Ed.2d 527 (1983).
Deputy Watson's attestation that the informant had previously supplied information "that has proven reliable, true and correct" was clearly sufficient to establish the reliability and veracity of the informant. Neugent v. State, 340 So.2d 52,54 (Ala. 1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1653,52 L.Ed.2d 361 (1977). The basis of the informant's knowledge was obviously his prior presence at the West Crawford apartment. Under the totality of the circumstances, we find that the issuing judge "had a 'substantial basis for . . . conclud[ing]' that probable cause existed" for a search of the apartment.Gates, supra. See also Houk v. State, 455 So.2d 115
(Ala.Cr.App. 1984).
 III
There was no error in the trial court's denial of McGruder'sBatson[5] motion as untimely. The record reveals the following:
 "After the Jury Venire had been qualified and struck, the following proceedings were held in the Fourth Floor Court Room of the Houston County Court House, Dothan, Alabama, to-wit:
 "THE COURT: Mrs. Trant, please call around the Jurors selected for this case.
 "(Thereupon the Trial Jury took their places in the Jury Box and the following proceedings were held in the presence *Page 1142 
and hearing of said Trial Jury, to-wit:)
 "THE COURT: Thank you, Mrs. Trant. Ladies and Gentlemen, before we get started, there is a preliminary motion in the file that I need to take up.
"[DEFENSE COUNSEL]: Yes, sir.
 "THE COURT: Ladies and Gentlemen, I am going to ask you to go with Mr. Barbarini to the Jury Deliberation Room and just wait back there until we bring you back in. And, please don't discuss the case.
 "(Thereupon, the Trial Jury proceeded to the Jury Room with the above instructions from the Court and the following proceedings were had, to-wit:)"
There followed arguments on McGruder's motion in limine. After that motion was denied, McGruder made his Batson motion, stating that the state struck five of the six blacks on the venire and alleging that these strikes had been racially motivated. The trial court responded:
 "The motion is not timely. The Jury has already been placed in the box and the relief is denied. All right. You may bring the Jury."
 "(Thereupon, the Trial Jury was returned to their places in the Jury Box and the following proceedings were held in the presence and hearing of the Trial Jury. . . .)"
Opening statements were then made by the prosecutor and defense counsel, after which the state began the presentation of its evidence.
 "An objection to an alleged Batson violation must be timely. Timeliness in this instance would indicate that the objection should be made early enough to give the trial court sufficient time to take corrective action without causing undue delay if it deemed action necessary. We have held that the proper time to raise such an objection is after the peremptory strikes have been made, but prior to the jury's being sworn."
Williams v. State, 530 So.2d 881, 884 (Ala.Cr.App. 1988) (citations omitted) (emphasis in original). Accord, Bell v.State, 535 So.2d 210, 212 (Ala. 1988); Saffold v. State,536 So.2d 970, 971 (Ala.Cr.App. 1988).
Although the trial transcript does not indicate that the jury was sworn after the selection process, both the judgment entry and the case action summary state that the jury was "duly empaneled, sworn and charged by the Court according to law." (Emphasis added.) McGruder does not argue on appeal that the conviction against him was returned by an unsworn, and therefore void, jury. Compare Abbott v. State, 494 So.2d 789,790 (Ala.Cr.App. 1986); Murphy v. State, 403 So.2d 314, 315
(Ala.Cr.App.), cert. denied, 403 So.2d 316 (Ala. 1981). Nor did he bring to the trial court's attention any alleged defect in the swearing of the jury. "Since there was no objection [at trial], the minute entry will be deemed correct. Armstead v.State, 57 Ala. App. 459, 329 So.2d 150 (1976)." Murphy v. State,403 So.2d at 316.
The minute entry informs us that the jury was, in fact, sworn; however, it does not inform us when the jury was sworn. Although this court is aware that the general practice is to swear the jury upon its members' being seated in the jury box, we are reluctant to hold that McGruder's motion was untimely solely on the basis of a general practice.
In Williams v. State, supra, we discussed at length the requirement that a Batson motion be timely made and the reasons for this requirement. As the Fifth Circuit Court of Appeals has stated: "The [Supreme] Court in Batson envisioned that a motion to strike would be made promptly, probably before the venirewas dismissed. See [476 U.S. 79], at [99-100] n. 24, 106 S.Ct. [1712] at 1724 n. 24." United States v. Erwin,793 F.2d 656, 667 (5th Cir.), cert. denied, 479 U.S. 991, 107 S.Ct. 589,93 L.Ed.2d 590 (1986) (emphasis added) (quoted in Williams v.State, 530 So.2d at 884). The Erwin court found the defendants'Batson motion, which was made after the jury was selected and the remainder of the venire released, but before the jury was empaneled, to be untimely. "In so holding, the court placed emphasis on the difficulties such untimeliness would cause *Page 1143 
the [trial] court and the great delay in starting the trialif a new venire had to be drawn and summoned." 530 So.2d at 884
(emphasis added). While the appellate courts of this state have adopted the swearing of the jury as a specific "cut-off point" for making a timely Batson motion, it is clear that we have done so because the swearing of the jury generally indicates that the rest of the venire has been excused. It is the release of the unselected members of the venire and the problems and difficulties created thereby which truly govern the timeliness of a Batson motion. See Williams, 530 So.2d at 884-85; UnitedStates v. Romero-Reyna, 867 F.2d 834, 837 (5th Cir. 1989) ("to be timely, the Batson objection must be made beforethe venire is dismissed and before trial commences") (emphasis added); Erwin, supra. As we stated in Williams, "[r]equiring the objection to be made before the jury is sworn and theremainder of the venire released does not appear to us to be an unreasonable requirement." 530 So.2d at 885 (emphasis added).
The jury in this case had clearly been selected, empaneled, and given some preliminary instructions before McGruder made his Batson motion. As in Williams:
 "It is obvious from the record that the remaining members of the venire, who were not selected for the jury, had been released. The trial court was faced with the same difficulties as those that confronted the trial court in Erwin — the great delay in starting the trial if a new venire had to be drawn. The undue delay and disruption of the legal process which would be caused by permitting the issue to be raised in such an untimely fashion are obvious." Id.
Even though the record does not clearly indicate that McGruder's Batson motion was made after the jury was sworn, it is clear that the motion was made after the unselected members of the venire had been released. Consequently, we hold that, under the facts of this particular case, the motion was untimely.
For the reasons stated above, the judgment of the Houston Circuit Court is due to be, and it is hereby affirmed.
AFFIRMED.
All Judges concur.
[1] In fact, Deputy Watson testified that, "According to information from an employee at the Country Club, [McGruder] was employed there." McGruder objected on the basis of hearsay and moved to exclude this statement. The trial judge sustained the objection, but did not exclude the statement or even rule on McGruder's motion to exclude.
[2] McGruder relies on Hannah v. State, 497 So.2d 837 (Ala.Cr.App. 1986), to support this position. We do not read Hannah to stand for this proposition. In any event, to the extent that it conflicts with the Alabama Supreme Court's opinion in Ex partePugh, 493 So.2d 393 (Ala. 1986), Hannah was expressly overruled by this court in Harrell v. State, 555 So.2d 257 (Ala.Cr.App. 1989). In Ex parte Pugh, the Supreme Court made it clear that
 "[i]n Alabama, the question of disclosure or nondisclosure of a confidential police informant's identity for the purposes of challenging probable cause is a matter of discretion for the trial court. New v. State, 337 So.2d 1355, 1358
(Ala.Crim.App. 1976). If the court does not abuse its discretion in granting or denying disclosure, we do not disturb its order."
493 So.2d at 397 (emphasis added).
McGruder sought the identity of the informant both at the hearing on his motion to suppress and at trial. The trial judge sustained the state's objections in both instances. Although the question is not clearly raised as an issue in this appeal, we find no abuse of discretion in the trial court's action. McGruder failed to establish any need for the disclosure of the informant's identity. See Neely v. State, 469 So.2d 702, 706
(Ala.Cr.App. 1985). Further, it is very clear that the informant was "a mere 'tip-ster' and was not a participant in the crime." Harrell v. State, 555 So.2d at 261. See also Exparte Pugh, supra.
[3] McGruder has not challenged the sufficiency of the description in the affidavit of this black male. Consequently, we do not address that issue in this opinion.
[4] Although Deputy Watson verified the location of the apartment and the presence of the Oldsmobile described by the informant, these "innocent details" clearly did not furnish probable cause to search the apartment. See Stanfield v. State,529 So.2d 1053, 1059 (Ala.Cr.App. 1988).
[5] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).